# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DANA RENAE MYERS,

     *Plaintiff,*

v.

FRANK BISIGNANO, [1]
Acting Commissioner of Social Security

     *Defendant.*

No. 4:24-cv-01044-MAL

## Memorandum & Order

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of the Acting Commissioner of Social Security denying the application of Plaintiff Dana Myers for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Because there is substantial evidence to support the decision denying benefits, the Court affirms the Commissioner's denial of Plaintiff's application.

## I.    Facts & Background

On December 27, 2021, Myers filed for DIB alleging disability beginning on May 18, 2020, due to physical and mental impairments (Doc. 10 at 1). Myers alleges memory problems, dislike of large crowds, and mental health problems including hallucinations and psychosis (Doc. 7-3 at 42–45 [Tr. 41–44]). She is taking medication for her mental health problems. *Id*. at 40–41. She suffers from migraines and takes medication to control them. *Id*. at 43. She also has problems with her right rotator cuff. *Id*. at 44. Myers complains of pain in her right shoulder, carpal tunnel

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Carolyn Colvin as the defendant in this suit.

1

syndrome, and cervical neck pain.  *Id*. at 44; Doc. 7-8 at 148–49 [Tr. 470–71].  Myers does limited housework, goes shopping once a month, and prepares some meals (Doc. 7-7 at 57–59 [Tr. 266–68]).  She also testified that she cannot reach above her head, can only move her arm halfway up, and has a one-pound lifting restriction (Doc. 7-3 at 42, 44 [Tr. 41, 43]).  She testified that she can stand and walk only for about ten minutes at a time.  *Id*. at 41.  Myers's previous jobs include working in home healthcare, janitorial work, and as a waitress (Doc. 7-7 at 47–54 [Tr. 256–63]).

By way of background, to be eligible for disability insurance benefits, a claimant must establish they are disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing 42 U.S.C. § 423(a)(1)(D)).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine if a claimant is disabled, the Commissioner engages in a five-step process.  20 C.F.R. § 416.920.  The five-step process requires the Commissioner to determine:

> 1) whether the claimant is presently engaged in a 'substantial gainful activity;'[2] 2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; 3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations …; 4) whether the claimant has the residual functional

---

[2] "Substantial gainful activity" must be both substantial and gainful.  20 C.F.R. § 404.1572.  Substantial work activity "involves doing significant physical or mental activities … even if it is done on a part-time basis…" *Id*.  Gainful work activity is "for pay or profit … [or] the kind of work usually done for pay or profit, whether or not the profit is realized.  *Id*.

2

capacity[3] to perform his or her past relevant work; and 5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (quoting *Kelley v. Callahan*, 133 F.3d 583, 587–88 (8th Cir. 1998).

Under step one of the above-referenced process, the ALJ found that Myers did not engage in substantial gainful activity from her alleged onset date of disability through the date she is last insured (Doc. 7-3 at 20 [Tr. 19]).  Under step two, the ALJ found that Myers had the following severe impairments: abnormality of joints in any extremity, depressive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD).  *Id.*  But the ALJ also determined that under step three, Myers did not have an impairment or combination of impairments that met the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id.* at 21.  Under step four, the ALJ found that Myers had residual functional capacity to perform light work as defined in 20 CFR 404.1566(b).  *Id.* at 23.  Finally, under steps four and five, the ALJ determined that Myers has no past relevant work, but that there are jobs in significant numbers in the national economy that she could have performed.  *Id.* at 26.

Myers's claim for benefits was originally denied on October 3, 2022 (Doc. 7-5 at 16 [Tr. 113]).  Myers requested reconsideration of denial of benefits, and the denial was affirmed.  *Id.* at 20–22.  Myers appealed and received a hearing with an Administrative Law Judge (ALJ).  *Id.* at 26; Doc. 7-3 at 34–54 [Tr. 33–53]).  The ALJ affirmed the denial of benefits.  *Id.* at 14–33.  Now Myers appeals to this Court, claiming that the ALJ's decision was not supported by substantial evidence on three independent bases: (1) because the ALJ failed to account for each of Myers's impairments in determining residual functional capacity (RFC) (Doc. 10 at 8);

---

[3] Residual functional capacity (RFC) is what a claimant can do despite her limitations, determined based on "all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations." *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

3

(2) because the ALJ provided no logical explanation for ignoring evidence regarding Myers's disability in determining residual functional capacity (*Id.* at 12); and (3) because the ALJ failed to properly consider Myers's subjective complaints (*Id.* at 14).

## II.    Legal Standard

Courts uphold the ALJ's decision on a Social Security disability claim if substantial evidence supports the ALJ's findings. *Strongson v. Barnhart*, 361 F.3d 1066, 1069 (8th Cir. 2004). "Substantial evidence" is a term of art meaning only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted); *see Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) ("Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."). The threshold for substantial evidence is not high and means only "more than a mere scintilla." *Biestek,* 587 U.S. at 103.

The Court examines the record *as a whole* and considers "both the evidence that detracts from the Commissioner's decision and the evidence that supports the decision." *Strongson*, 361 F.3d at 1070. If there is substantial evidence to support the decision, the Court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the Court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Courts "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

A claimant's RFC is a medical question which the ALJ must determine with support from some medical evidence. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Id.* A plaintiff bears the burden of proving her RFC. *Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000). "[T]he record must include some medical evidence that supports the ALJ's residual functional capacity finding." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000).

4

### III.    Application of Law to Facts

### A. The ALJ's Consideration of Myers' Joint Impairment

### 1. Myers's Joint Impairment Allegations

Myers takes issue with the ALJ's step four determination of her RFC where the ALJ determined that "the evidence does not substantiate disabling joint impairments." (Doc. 10 at 8; Doc. 7-3 at 24 [Tr. 23]).[4]  Myers argues that the ALJ failed to account for her shoulder impairment and its impact on her work-related physical abilities (Doc. 10 at 10).  Myers argues that despite contrary evidence, the ALJ relied on x-rays of the shoulder joint which described the AC joint degeneration[5] as mild to justify finding there were no limitations associated with Myers's shoulder impairment (*Id*. at 9; Doc. 7-3 at 24 [Tr. 23]).  Additionally, Myers alleges that the ALJ's decision was wrong because the ALJ inconsistently found that the state agency medical consultant's opinion was persuasive in some regards but not persuasive regarding the pushing/pulling limitation[6]  (Doc. 10 at 12).  Myers also asserts that the ALJ failed to articulate proper consideration of the medical evidence, which contradicts the ALJ's RFC.  *Id*. at 13.

---

[4] The ALJ determined Myers "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) such that she is limited to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; push/pull as much as can lift/carry; occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, kneel, and crouch; occasionally stoop and crawl; occasionally work at unprotected heights and around moving mechanical parts; occasionally operate a motor vehicle; and work in moderate noise. In addition, understand, remember, and carry out simple, routine tasks; able to make and perform simple work-related decisions; and occasional interaction with co-workers and the public." (Doc. 7-3 at 23 [Tr. 22]).

[5] The AC joint is part of the shoulder where the collarbone connects to the shoulder blade. https://perma.cc/2KSA-CNCW.

[6] The state agency consultants found Myers is limited to light work.  The consultants also noted "right arm limited in push and pull to occ."  (Doc. 7-4 at 29, 43 [Tr. 81, 95]).

### 2. Application of Law to Myers's Joint Impairment Allegations

Myers's arguments lack merit. Substantial evidence supports the ALJ's RFC finding. The ALJ considered Myers' shoulder impairment in discussing the RFC (Doc. 7-3 at 23 [Tr. 22]). After acknowledging Myers' complaints, the ALJ found:

> [X]-rays of the right shoulder in September 2020 and October 2022 described the AC joint degeneration as 'mild' (Ex. 3F, 41-42; Ex. 22F, 166). The claimant treated the problems with medications, injections, and physical therapy (See, e.g., Ex. 7F, 2; Ex. 8F, 4; Ex. 22F, 165). Despite some findings of AC joint tenderness and reduced right shoulder movement due to pain, examinations produced normal physical findings, including no deformity/malignment, normal range of motion of arms and hands, no sensory deficit, normal strength, no extremity edema, palpable pulses, and normal gait (See, e.g., Ex. 8F, 5, 22, 38; Ex. 22F, 168; Ex. 24F, 27).

(Doc. 7-3 at 24 [Tr. 23]). The ALJ also noted that "examinations found normal strength, arms and hands with full range of motion, negative Tinel's sign, negative Phalen's test, and equal/strong grips bilaterally." *Id.* at 25. Myers' medical record reflects "full range of motion noted in affected joints." (Doc. 7-8 at 124 [Tr. 446]). *See also* (Doc. 7-8 at 551 [Tr. at 873]; Doc. 7-7 at 47–48 [Tr. 256–57]) (describing Myers's employment after her alleged date of disability, where she engaged in lifting, carrying, and cleaning). This is "more than a mere scintilla" of evidence supporting the ALJ's RFC finding. *Biestek,* 587 U.S. at 103. The court will not reweigh the evidence. *See Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022).

Myers' argument that the ALJ failed to account for contradictory medical evidence does not support reversal. An ALJ is not required to discuss each piece of evidence, and failure to cite specific evidence does not indicate that the evidence was not considered. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). But "[t]he ALJ must at least minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson*, 361 F.3d at 1070. Here, the ALJ acknowledged findings of "AC joint tenderness and reduced right shoulder movement" but ultimately relied on other evidence to conclude that all the "evidence does not substantiate disabling joint impairments." (Doc. 7-3 at 24 [Tr. 23]). Whether the ALJ should have gone into more

6

detail or evaluated the evidence differently is not a question properly before this court.  *See Austin*, 52 F.4th at 731 (holding despite claimant's contention, ALJ considered complaints about headaches, and concluding "it is not this Court's role to reweigh the evidence") (internal quotation marks omitted).  "The ALJ's brevity is not reversible error."  *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021).

Nor did the ALJ err simply because she adopted some, but not all, of the state agency consultant's findings.  (Doc. 7-3 at 25 [Tr. 24]) ("The state agency consultants' assessments are *generally* consistent with the record.") (emphasis added)).  "[T]he ALJ is free to accept some, but not all, of a medical opinion."  *Austin*, 52 F.4th at 729.  "[T]he ALJ is not required to 'explicitly ... reconcile every conflicting shred' of medical evidence."  *Id.* (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  Though the ALJ must give reasons for discounting a *treating* physician's opinion, *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007), this Court has found no requirement that the ALJ do the same for failing to adopt limitations identified by state agency consultants.  *See Hilderbrand v. Berryhill*, 2017 WL 2618269, at *23 (E.D. Mo. June 16, 2017); *Nicolls v. Astrue*, 874 F. Supp. 2d 785, 801–02 (N.D. Iowa 2012); *see also Reed v. Saul*, 481 F. Supp. 3d 877, 887 (D. Minn. 2020) ("The Court knows of no authority which would require the ALJ to make a detailed discussion of the weight afforded to the state agency consultants.").

### B. Myers's Subjective Complaints

#### 1. Myers's Subjective Complaint Allegations

Myers also argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate Myers's subjective complaints (Doc. 10 at 14).  The ALJ determined:

> [T]he claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  The claimant's daily activities suggest her conditions are not as limiting as alleged.  For example, she reported having the ability to take care of personal needs, prepare simple meals, shop by phone, use public transportation, and spend time with others (Ex. 7E, 2-5; Ex. 2F, 82).  In addition, the claimant worked during the

7

period at issue, showing some ability to perform basic work activities. Furthermore, the record does not demonstrate the requisite severity.

(Doc. 7-3 at 24 [Tr. 23]).   Myers argues that the above determination does not demonstrate why her subjective shoulder complaints were not adopted and does not logically connect any evidence listed by the ALJ with a rejection of Myers's subjective complaints (Doc. 10 at 16).   Myers also argues that the above determination fails to demonstrate that she would be capable of full-time work and that the ALJ mischaracterized Myers's complaints in an attempt to support the ALJ's own conclusions.  *Id*. at 16–17.   Myers says this is legal error because the ALJ did not abide by the regulatory obligation outlined in Social Security Ruling (SSR) 16-3p.  *See Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).[7]

## 2.  Legal Standard for Subjective Complaints

When considering subjective complaints, the ALJ must consider factors originally laid out in factors set out in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) such as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions;
6. the claimant's work history; and
7. the absence of objective medical evidence to support the claimant's complaint.

---

[7] SSR 16-3p explains the "two-step process" for evaluating an individual's symptoms.  First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms.  *SSR 16-3P*, 2017 WL 5180304, at *3 (Soc. Sec. Oct. 25, 2017).  Second, the ALJ evaluates the intensity and persistence of an individual's symptoms and determines the extent to which those symptoms limit the claimant's ability to perform work-related activities.  *Id*. at *4.  The ALJ will consider an individual's statements about intensity, persistence, and limiting effects of symptoms and whether the statements are consistent with objective medical evidence or other evidence.  *Id*. at *6.

*Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). SSR 16-3p adopts the *Polaski* factors and additionally includes consideration of:

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; and
- Any measures other than treatment an individual uses or has used to relieve pain or other symptoms.

2017 WL 5180304, at *8. But an ALJ does not need to explicitly discuss each factor. *Buckner*, 646 F.3d at 558 (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir.2005)). "The ALJ may discount subjective complaints of pain if they are inconsistent with the evidence as a whole." *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007). If an ALJ explicitly finds the claimant's testimony is not credible and gives good reasons for the findings, the court will normally defer to the ALJ's findings. *Id.* at 696.

### 3. Application of Law to Fact

Regarding step one of the two-step process for evaluating symptoms, the ALJ found Myers's medically determinable impairments could reasonably be expected to cause the alleged symptoms (Doc. 7-3 at 23 [Tr. 22]). The ALJ noted that where statements of intensity, persistence, or pain are not substantiated by objective medical evidence, the ALJ must consider other evidence in the record to determine if the claimant's symptoms limit her ability to work. *Id.* at 24. The ALJ went on to describe Myers's subjective complaints but then discounted her subjective complaints because her daily activities suggested that her conditions were not as limiting as alleged. *Id.* at 23. The ALJ noted that Myers "reported having the ability to take care of personal needs, prepare simple meals, shop by phone, use public transportation, and spend time with others (Ex. 7E, 2-5; Ex. 2F, 82). In addition, the claimant worked during the period at issue, showing some ability to perform basic work activities." *Id.* at 24. The ALJ also noted that Myers treated her joint degeneration with "medications, injections, and physical therapy." *Id.* The ALJ concluded that Myers's "assertion that she is not able to perform basic work activities is not consistent with the evidence, as it is inconsistent with her admitted activities of daily living, work activities during the time period at issue, and lack of requisite severity." *Id.* at 25.

9

The state agency medical finding also noted that Myers's statements about intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by objective medical evidence alone.  (Doc. 7-4 at 28 [Tr. 80]).  The state agency consultants found Myers's statements regarding symptoms to be "partially consistent" with the total medical and non-medical evidence in the file.  *Id.*

The above indicates the ALJ considered the *Polaski* and SSR 16-3p factors. There is substantial evidence in the record to support the ALJ's RFC determination. *Strongson*, 361 F.3d at 1069.

### CONCLUSION

Based on the complete record in this case, the Court finds the ALJ's decision finding Myers not disabled is supported by substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is affirmed.

A separate judgment is entered herewith.

**SO ORDERED,**

This 19th day of May, 2026.

_Maria A. Lanahan_
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE